# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. L. BINYARD, Minor.

UNPUBLISHED
April 18, 2017

No. 333485
Wayne Circuit Court
Family Division
LC No. 12-508893-NA

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his daughter, AB, pursuant to MCL 712A.19b(3)(a)(*ii*) and (g).[1] We affirm.

Respondent first argues that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. We disagree.

To terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000).[2] This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(a)(*ii*) and (g), which permit termination when the following conditions are satisfied:

---

[1] It is apparent from the record that the trial court found clear and convincing evidence to terminate respondent's parental rights pursuant to §§ 19b(3)(a)(*ii*) and (g). Although other statutory subsections were referenced in the relevant portions of the lower court record, these additional statutory subsections pertained to the termination of parental rights of other individuals not parties to this appeal.

[2] *In re Trejo Minors* was superseded by statute on other grounds as recognized by *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

-1-

(a) The child has been deserted under either of the following circumstances:

\* \* \*

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody of the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

After reviewing the record, we conclude the trial court did not clearly err in finding that statutory grounds for termination were established by clear and convincing evidence.

The evidence clearly and convincingly established that respondent deserted AB for 91 or more days and failed to seek custody of her during that period. A parent's failure to provide support for a child, have contact with them, and participate in services for a period in excess of the statutory period is sufficient to establish desertion under MCL 712A.19b(3)(a)(*ii*). See, e.g., *In re Laster*, 303 Mich App 485, 492; 845 NW2d 540 (2013) (recognizing that the respondent father had deserted the minor children where he had moved out of state, did not provide support and had not had contact with the children other than telephone contact). AB was originally removed from her mother's care and placed with respondent in July 2012. At the time, respondent lived with his mother who was, herself, listed on the Child Protective Services (CPS) Central Registry. Although respondent was allowed to take custody of his daughter, he was given one week to obtain suitable housing. Despite the trial court's order, respondent and AB continued to live with respondent's mother for several months. In September 2012, respondent was arrested and, for some length of time, jailed on felonious assault and felony-firearm charges. Consequently, AB was removed from respondent's care and placed in the care of her maternal aunt. AB remained in this placement until June 2015, when she was placed in a non-relative foster home. Between December 2013 and May 2014, respondent was incarcerated. He was again incarcerated on June 4, 2015. According to the lower court record, respondent will remain incarcerated until June 2017. There was a period between August 2014 and June 4, 2015, when respondent was not incarcerated or participating in drug rehabilitation. Notably, during this 10-month period, respondent effectively abandoned his daughter.

Although respondent claimed that he looked for housing during this period, he did not obtain suitable housing for AB. Instead, respondent elected to continue to live in his parents' home, a home he knew to be unsuitable. Respondent also failed to obtain a legal source of income. Respondent testified that he was employed between August 2014 and November 2014. However, he had not had a legal source of income since November 2014. Respondent and AB's maternal aunt both testified that respondent provided food, clothing, and money for AB's care. However, respondent's claim that he financially supported his daughter is not persuasive, given that he admitted that he had not been gainfully employed since November 2014. Testimony that

respondent may have given some gifts to AB is not the equivalent of financially supporting his daughter. There was also conflicting testimony regarding respondent's contact with AB. Tracie Barnard, a foster care worker assigned to AB's case in May 2015, testified during the final termination hearing on May 19, 2016 that she was not sure if respondent had visited AB as respondent had not maintained contact with Barnard. According to Barnard's records, the last recorded visit between respondent and AB was April 2013. That Barnard was not aware of respondent's alleged visits with AB highlights his lack of communication with Barnard. The lack of communication is further confirmed by Barnard's testimony that in May 2015, she made several attempts to communicate with respondent and he failed to respond. Barnard also testified that respondent had never contacted her, particularly to ascertain the health and welfare of AB. In contrast, respondent testified that he visited AB regularly when he was not incarcerated, and there was additional record evidence to support his contention. This testimony came from Gale Hibbert, a family friend, and AB's maternal aunt. With regard to Hibbert, the trial court characterized her testimony as "false[.]" The trial court went on to note, "I don't believe [Hibbert's] credibility; her statements" with regard to respondent spending time with AB or his relationship with AB. We defer to the trial court's assessment of the credibility of witnesses. *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). In sum, respondent's failure to make any meaningful effort to prepare a safe, secure and stable home for AB during the entire four years that she was in care, and in particular during the time that he was not incarcerated, reflects a situation where respondent effectively deserted AB. In the words of the trial court:

> [Respondent] has a long history of lack of appropriate housing, lack of legal source of income, and has shown no consistent evidence that he can ever properly care and/or provide for [AB's] needs.

Accordingly, we agree with the trial court that there was clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*).

For the above stated reasons, there was also clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g), as respondent was unable to provide AB with proper care and custody. There was also clear and convincing evidence that respondent would be unable to provide proper care and custody within a reasonable time considering AB's age. At the time the trial court terminated his parental rights, respondent still had more than one more year to serve on his prison sentence. Furthermore, respondent did not have a viable plan after his release from prison. Respondent testified that after his release, he would live with Hibbert until he got on his feet, but he did not have an established, reliable plan. With respect to employment, respondent claimed that he had three jobs waiting for him: one with his father, another with the flooring company where he had previously worked for three months, and a third job doing home remodeling with a friend. Again, respondent's plan in this regard was also not reliable or established. AB was nearly seven years old at the time of the termination hearing. She had been in care for four years. There was no credible or persuasive evidence that respondent will be able to provide her with a safe and secure home environment in the foreseeable further. Accordingly, termination under MCL 712A.19b(3)(g) was supported by clear and convincing evidence.

Respondent argues that termination of his parental rights based on his incarceration was improper under *In re Mason*, 486 Mich 142, 161 n 11; 782 NW2d 747 (2010). Respondent further asserts that by offering the family friend as a caregiver during his incarceration, he satisfied his obligations to provide care and custody for his daughter. Contrary to respondent's contention, the trial court did not terminate his parental rights based solely on his inability to care for AB as a result of his incarceration. Instead, it was the four years of instability and lack of suitable housing when he was not incarcerated that were the compelling factors motivating the trial court's decision. Further, while it is true that an incarcerated parent does not need to personally care for the child, and instead can provide proper care and custody through placement with a relative, *id.* at 161 n 11, Hibbert was not a relative. Indeed, respondent testified that he had never even seen Hibbert's home. Respondent's suggested placement with a non-relative, made well after the fact, does not satisfy the obligation he had as a parent to provide his daughter with proper care and custody.

Next, respondent challenges the trial court's finding that termination of his parental rights was in the child's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court may consider several factors when deciding if termination of parental rights is in a child's best interests, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts Minors,* 297 Mich App 35, 42; 823 NW2d 144 (2012) (citations omitted). This Court reviews for clear error a trial court's finding that termination of parental rights is in the child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

The trial court did not clearly err in finding that termination of respondent's parental rights was in AB's best interests. AB had been a ward of the court for nearly four years. During those four years, respondent did not obtain suitable housing, and he could not demonstrate that he could provide for AB financially, or that he was willing to put her needs above his own. For three of those four years, AB was placed with her maternal aunt. However, in June 2015, AB was removed from her maternal aunt's care because they were found to be living in the basement of someone's home and the home was infested with bedbugs. Thus, even while placed with a relative, stability eluded AB. It was only recently, in the 12 months preceding termination, that AB has had any sense of stability and permanence. In June 2015, AB was placed in a pre-adoptive foster home. She is doing well in this placement and has bonded with the foster parents. She refers to her foster parents as "mom" and "dad[,]" and she has happily reported to her classmates that she hopes to be adopted. By contrast, AB does not generally speak of respondent. Respondent simply has not and cannot provide AB with the stability, permanence, and finality that she requires. The trial court did not clearly err in finding that it was in AB's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra
